UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSH DESPORT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12446** |
| **SHAMROCK ENERGY SOLUTIONS, LLC** | **SECTION: "G"** |

## ORDER AND REASONS

Plaintiff Josh Desport ("Plaintiff") brings this suit against his former employer, Shamrock Energy Solutions, LLC ("Shamrock"), alleging discrimination under Louisiana Revised Statute § 23:332 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.[1] Before the Court is Plaintiff's "Motion for Summary Judgment."[2] Shamrock has not filed an opposition to the instant motion and therefore the motion is deemed unopposed. However, a motion for summary judgment may not be granted solely because it is unopposed.[3] Nevertheless, the moving party need only make a prima facie showing of its entitlement to judgment.[4] Plaintiff can make such a showing on his hostile work environment claim, but not on his constructive discharge claim. Therefore, considering the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion in part, denies the motion in part, and defers ruling in

---

[1] Rec. Doc. 1-1; Rec. Doc. 1-3.

[2] Rec. Doc. 24.

[3] *See Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988); *John v. Louisiana*, 757 F.2d 698, 700 (5th Cir. 1985).

[4] *Eversley*, 843 F.2d at 174; *Johnson v. LaShip, LLC*, No. 16-570, 2018 WL 2735486, at *2 (E.D. La. June 8, 2018) (Milazzo, J.).

1

part pending additional briefing.

## I. Background[5]

On April 3, 2018, Plaintiff filed a complaint in the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana.[6] On May 1, 2019, the Equal Employment Opportunity Commission (the "EEOC") issued Plaintiff a Notice of Suit Rights.[7] On August 6, 2019, Plaintiff filed an amended complaint.[8] On September 4, 2019, Shamrock removed the case to this Court, asserting jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.[9]

Plaintiff was employed by Shamrock as a Lead Production Operator on oil platforms beginning on January 5, 2015 through April 28, 2017.[10] Plaintiff, a citizen of the United Houma Nation, a Native American tribe,[11] claims that during his employment he was discriminated against by employees of Shamrock based on his race.[12] Plaintiff details several encounters with Shamrock employees. For example, fellow employee Troy Comeaux ("Comeaux") asked Plaintiff why he was "sitting on the floor like some kind of Indian" and did not "live on a reservation and live off

---

[5] Under Federal Rule of Civil Procedure 56(e)(2), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion." Likewise, under Local Rule 56.2, the failure to oppose a motion requires a court to deem admitted the moving party's statement of uncontested material facts. Given that the instant motion is unopposed, the Court will deem admitted Plaintiff's statement of uncontested material facts.

[6] Rec. Doc. 1-1.

[7] Rec. Doc. 1-2.

[8] Rec. Doc. 1-3.

[9] Rec. Doc. 1.

[10] Rec. Doc. 24-3 at 1; Rec. Doc. 1-3 at 2.

[11] Rec. Doc. 24-3 at 1; Rec. Doc. 24-15.

[12] *See generally* Rec. Doc. 1-3; Rec. Doc. 24-2.

of free money."[13] Comeaux "would laugh and say" that Plaintiff was on TV anytime former Louisiana Governor Bobby Jindal was shown, and referred to Plaintiff as the "platform Mexican" on a daily basis.[14] Plaintiff reported Comeaux's comments to his supervisor Frank Cornay ("Cornay"), but Cornay told him "don't worry about it."[15]

Plaintiff claims that Comeaux became physical with Plaintiff when Plaintiff requested to be moved out of his shared room with Comeaux, and that Comeaux "entrapped Plaintiff and hit Plaintiff repeatedly with a door" while asking Plaintiff if he wanted to fight.[16] Plaintiff testified at his deposition that Comeaux "twisted his nipples," an act that Comeaux only did to Plaintiff and no other employees on the platform.[17] Plaintiff reported the physical incident involving the door to supervisor Shawn LaBauve who then reported it to a manager, Craig Robichaux ("Robichaux").[18]

Plaintiff asserts that on June 30, 2016, employee Joe Primeaux ("Primeaux") made a vulgar comment about Plaintiff's wife.[19] The next day, Plaintiff "submitted a written diatribe" via email to Robichaux.[20] In the email, Plaintiff informed Robichaux that "[p]eople have cursed [Plaintiff], pushed [Plaintiff], made racist remarks about [Plaintiff's] looks and [Plaintiff's] heritage."[21]

---

[13] Rec. Doc. 24-3 at 1–3.

[14] *Id.* at 1–2.

[15] *Id.* at 2.

[16] Rec. Doc. 24-2 at 12.

[17] Rec. Doc. 24-4 at 22.

[18] Rec. Doc. 24-2 at 12.

[19] *Id.*

[20] Rec. Doc. 24-3 at 2; Rec. Doc. 24-12.

[21] Rec. Doc. 24-12.

3

Plaintiff stated that his race and appearance had been "belittled," but that upon reporting the incidents to Cornay and LaBauve he was told not to worry about the comments ("2016 Complaint").[22]

Thereafter, in early 2017, employee Brandon LeBeauf ("LeBeauf") "came into Plaintiff's room after-hours with a small seagull feather, at which time LeBeauf tried to put it in Plaintiff's hair" while stating "you're supposed to be Indian, why don't you have feathers in your hair?"[23] When Plaintiff told LeBeauf he couldn't wear feathers unless given to him by "[h]is Chief for accomplishments of bravery," LeBeauf attached the feather to a bulletin board in Plaintiff's bunkroom "to remind him of his heritage."[24] Plaintiff also reported this incident to supervisor Mike Yearic ("Yearic") ("2017 Complaint").[25] Plaintiff further recounts a contract roustabout walking by Plaintiff and stating "Look, he's sitting Indian style," as well as telling a "joke" about an "Indian sitting on the side of the road selling bracelets" and "a Native American man telling time by using shadows."[26]

Finally, employee Lance Martin ("Martin") "tacked a piece of propaganda on Plaintiff's bedroom wall" depicting the arrests of the Oceti Sakowin Camp by armed riot police.[27] Plaintiff again reported this incident to Yearic and Chris Davis ("Davis").[28] That same day, Plaintiff

---

[22] *Id.*

[23] Rec. Doc. 24-2 at 13; Rec. Doc. 24-3 at 2.

[24] Rec. Doc. 1-3 at 3 (internal quotation marks omitted).

[25] Rec. Doc. 24-3 at 2–3.

[26] *Id.* at 3.

[27] Rec. Doc. 1-3 at 3; Rec. Doc. 24-3 at 3.

[28] Rec. Doc. 24-3 at 3.

"attempted to formally submit his two weeks' notice" to Shamrock via email.[29]

After submitting his notice, Plaintiff was contacted by Shamrock's Human Resources employee Becky McManus ("McManus") who told Plaintiff that Shamrock was going to conduct an investigation into the incidents reported by Plaintiff.[30] The investigation was completed on March 24, 2017, and "found that Plaintiff had suffered from harassment and discrimination with regard to his Native Heritage."[31] The report stated that (i) the offenders involved in the 2016 Complaint "had been moved to different platforms and/or terminated" for reasons unrelated to Plaintiff's alleged harassment; (ii) the offenders involved in the 2017 Complaint had been terminated for reasons unrelated to Plaintiff's claims, and (iii) "with these individuals moved from the areas where Mr. Desport works, the harassment will be stopped."[32] Plaintiff testified at his deposition that the reference in the report to the July 2016 Complaint was about Primeaux, following his vulgar comment about Plaintiff's wife, and the reference to the 2017 Complaint was about LeBeauf, who tacked a feather to Plaintiff's bulletin board.[33]

In addition, Plaintiff was "assured that Shamrock was going to conduct field-wide discrimination training" and "wanted to speak with him in person to better understand his position and concerns."[34] The investigation report indicates the same, as it states that "[i]n follow up," Shamrock "will be conducting training company-wide on diversity and discrimination in the

---

[29] *Id.*

[30] Rec. Doc. 24-3 at 4.

[31] *Id.*

[32] Rec. Doc. 24-7.

[33] Rec. Doc. 24-4 at 41–42.

[34] Rec. Doc. 24-3 at 5.

5

workplace" and that it became apparent to the company "after both of [Shamrock's] investigations that this awareness needs to be implemented in the workplace."[35] After the investigation, Plaintiff "informed the company that he would rescind his resignation so long as the company remediated the ongoing harassment."[36]

Thereafter, Martin returned to the same platform as Plaintiff, prompting Plaintiff to contact McManus to ask why Martin was permitted back on the platform.[37] Plaintiff was told that Shamrock "had not actually made any arrangements to move Martin."[38] Plaintiff was then informed that LeBeauf had also been re-hired and would be returning to the platform.[39] "Upon the offenders' return in direct contravention to the assurances made to Plaintiff," Plaintiff again put in his two weeks' notice on April 28, 2017.[40] After his departure, Plaintiff experienced an anxiety attack and started taking antianxiety medication.[41] Plaintiff testified at his deposition that he is now "blackballed from the Gulf" as a result of his harassment complaints.[42]

In this suit, Plaintiff brings two causes of action. First, Plaintiff alleges employment discrimination pursuant to Louisiana Revised Statute § 23:332 ("Section 23:332").[43] Second,

---

[35] Rec. Doc. 24-7.

[36] Rec. Doc. 24-2 at 15.

[37] Rec. Doc. 24-3 at 5.

[38] Rec. Doc. 24-2 at 16; Rec. Doc. 24-3 at 5.

[39] Rec. Doc. 24-3 at 5.

[40] *Id.* at 6.

[41] Rec. Doc. 24-2 at 18; Rec. Doc. 24-3 at 6.

[42] Rec. Doc. 24-4 at 58.

[43] Rec. Doc. 1-3 at 6.

Plaintiff alleges employment discrimination pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII").[44] Plaintiff seeks damages.[45]

On April 24, 2019, Plaintiff was deposed.[46] On October 19, 2020, counsel for Shamrock filed a motion to withdraw.[47] Pursuant to Local Rule 83.2.11, withdrawing counsel confirmed that notification of the deadlines and pending court appearances in this case was provided to Shamrock via certified mail to Jason Lyons, General Counsel of Shamrock, at 4800 Hwy. 311, Houma, LA 70360.[48] Withdrawing counsel further certified service of the motion to withdraw on Jason Lyons at the same address.[49]

On October 22, 2020, the Court granted the motion to withdraw and in doing so, noted that "Shamrock is a limited liability company and therefore cannot proceed pro se. New counsel has not been enrolled to represent Shamrock. Shamrock will not be able to further 'appear in federal court unless represented by a licensed attorney.'"[50] After Shamrock failed to enroll counsel, the Court issued an Order on April 20, 2021, in which the Court ordered Shamrock to enroll counsel within thirty days and stated that, upon failure to do so, the Court would entertain a motion by Plaintiff to resolve the matter.[51] To date, Shamrock has failed to enroll new counsel.

On May 5, 2021, Plaintiff filed the instant motion for summary judgment, set for

---

[44] *Id.* at 7.

[45] *Id.* at 9.

[46] Rec. Doc. 24-4.

[47] Rec. Doc. 13.

[48] Rec. Doc. 13-1.

[49] Rec. Doc. 13.

[50] Rec. Doc. 14 (quoting *Memon v. Allied Domecq QSR*, 385 F.3d 871, 893 (5th Cir. 2004)).

[51] Rec. Doc. 23.

submission on June 2, 2021.[52] Pursuant to Local Rule 7.5, any opposition to the motion was due eight days before the noticed submission date. Shamrock has not filed an opposition to the instant motion and therefore the motion is deemed unopposed.

Plaintiff certified service of the motion for summary judgment on Shamrock not through Jason Lyons, as Shamrock's withdrawing counsel had done in the motion to withdraw, but through Jeffrey Trahan at 4800 Hwy. 311, Houma, LA 70360.[53] On June 14, 2021, given that Plaintiff served the instant motion for summary judgment on Jeffrey Trahan and not on Shamrock's General Counsel Jason Lyons, the Court ordered Plaintiff to confirm that service of the motion on Shamrock was proper.[54] On July 13, 2021, Plaintiff filed a "Confirmation of Service" into the record.[55]

## II. Legal Standards

*A.    Legal Standard on an Unopposed Motion for Summary Judgment*

A motion for summary judgment may not be granted solely because it is unopposed.[56] Under Federal Rule of Civil Procedure 56(e)(2), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion."[57] Likewise, under Local Rule 56.2, the failure to oppose a motion requires a court in this district to deem admitted the moving party's statement of

---

[52] Rec. Doc. 24 at 2.

[53] Rec. Doc. 24.

[54] Rec. Doc. 28.

[55] Rec. Doc. 30.

[56] *Eversley*, 843 F.2d at 174; *John*, 757 F.2d at 700.

[57] Fed. R. Civ. P. 56(e)(2).

uncontested material facts.[58] "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[59] Taking such facts as admitted, the moving party need only make a prima facie showing of its entitlement to judgment in order to succeed on an unopposed motion for summary judgment.[60]

### B.     *Legal Standard on a Title VII Claim*

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . . [or] sex."[61] A plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive working environment,[62] or by proving disparate treatment on the basis of race or sex.[63]

The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII.[64] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination or retaliation.[65] If the plaintiff can establish a prima facie case, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory purpose for an adverse employment

---

[58] EDLA Local Rule 56.2

[59] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)

[60] *Eversley*, 843 F.2d at 174; *Johnson v. LaShip, LLC*, No. 16-570, 2018 WL 2735486, at *2 (E.D. La. June 8, 2018) (Milazzo, J.).

[61] 42 U.S.C. § 2000e–2(a)(1).

[62] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

[63] *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

[64] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[65] *Id.* at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

action.[66] The defendant must point to admissible evidence in the record,[67] but the burden is one of production, not persuasion.[68] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[69] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[70] If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination.[71] A plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[72]

### III. Analysis

Plaintiff claims that Shamrock violated both Title VII and Louisiana Revised Statute § 23:332 by (i) subjecting him to a hostile work environment and (ii) constructively discharging him from his employment. The Fifth Circuit has held that the same analysis applies for claims under Title VII and the Louisiana Employment Discrimination Law.[73] Therefore, the Court will address the state and federal claims simultaneously.

Shamrock failed to file a brief in opposition to the instant motion. "When a motion for

---

[66] *Id.*

[67] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

[68] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[69] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[70] *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[71] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[72] *Id.*

[73] *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 891 n.2 (5th Cir. 2012).

summary judgment is unopposed the court may not grant the motion by default, but is entitled to accept as undisputed the facts it presents."[74] Taking Plaintiff's statement of uncontested facts as admitted, the Court must determine whether Plaintiff has shown a prima facie case for its entitlement to judgment. In undertaking such analysis, Federal Rule of Civil Procedure 56 "does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[75] "Instead, the proper inquiry to an unopposed motion for summary judgment is to determine whether the facts advanced in the motion and supported by appropriate evidence make out a prima facie case that the movant is entitled to judgment."[76]

A.  *Hostile Work Environment*

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . . [or] sex." A plaintiff may establish a violation of Title VII by proving that discrimination has created a hostile or abusive working environment.[77] "Title VII is violated 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[78]

To show the existence of a hostile environment, Plaintiff must establish:

(1) the employee is a member of a protected group; (2) the employee was subjected

---

[74] *Johnson*, 2018 WL 2735486, at *2; *see also Jegart v. Roman Cath. Church of Diocese of Houma Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010).

[75] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[76] *Johnson*, 2018 WL 2735486, at *2; *see also Eversley*, 843 F.2d at 174.

[77] *Meritor Sav. Bank*, 477 U.S. at 66.

[78] *Vallevillo v. U.S. Dep't of Hous. & Urban Dev.*, 155 F. App'x 764, 766 (5th Cir. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

11

to unwelcome harassment; (3) the harassment was based on [his] membership in a protected class; (4) the harassment affected a term, condition, or privilege of [his] employment; and (5) [his] employer knew or should have known of the harassment and failed to take prompt remedial action.[79]

Given the undisputed facts, Plaintiff has made a prima facie showing as to each prong. Under the first prong, Plaintiff, as a Native American, is a member of a protected class.[80] Under the second and third prongs, Plaintiff has provided numerous examples of unwelcome harassment based on his Native American heritage starting in January 2015.[81] For example, Plaintiff's coworker Comeaux asked Plaintiff why he was "sitting on the floor like some kind of Indian" and did not "live on a reservation and live off of free money."[82] Comeaux "would laugh and say" that Plaintiff was on TV anytime former Louisiana Governor Bobby Jindal was shown, and referred to Plaintiff as the "platform Mexican" on a daily basis.[83] Plaintiff claims that Comeaux became physical with Plaintiff when Plaintiff requested to be moved out of his shared room with Comeaux, and that Comeaux "entrapped Plaintiff and hit Plaintiff repeatedly with a door" while asking Plaintiff if he wanted to fight.[84]

Further, LeBeauf "came into Plaintiff's room after-hours with a small seagull feather, at which time LeBeauf tried to put it in Plaintiff's hair" while stating "you're supposed to be Indian, why don't you have feathers in your hair?"[85] When Plaintiff told LeBeauf he couldn't wear feathers

---

[79] *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012).

[80] Rec. Doc. 24-2 at 22; Rec. Doc. 24-15. *See also Gobert v. Babbitt*, No. 98-2629, 2000 WL 1219283, at *5 (E.D. La. Aug. 28, 2000) (Barbier, J.); *Raines v. Indianapolis Public Schools*, 52 Fed. App'x 828, 831 (7th Cir. 2002)

[81] *See generally* Rec. Doc. 24-2; Rec. Doc 24-3; Rec. Doc. 24-4.

[82] Rec. Doc. 24-3 at 1–3.

[83] *Id.* at 1–2.

[84] Rec. Doc. 24-2 at 12.

[85] *Id.* at 13; Rec. Doc. 24-3 at 2.

unless given to him by "[h]is Chief for accomplishments of bravery," LeBeauf attached the feather to a bulletin board in Plaintiff's bunkroom "to remind him of his heritage."[86] Finally, Plaintiff's coworker Martin "tacked a piece of propaganda on Plaintiff's bedroom wall" depicting the arrests of the Oceti Sakowin Camp by armed riot police.[87] These facts are sufficient to meet the second and third prongs of a hostile work environment claim.

Under the fourth prong, again taking all of Plaintiff's facts as admitted, Plaintiff also makes a prima facie showing that the harassment affected a term, condition, or privilege of his employment. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[88] The Supreme Court has instructed that discrimination under Title VII "is not limited to 'economic' or 'tangible' discrimination."[89] Rather, Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[90]

The Supreme Court has described the contours between actionable conduct and conduct that is merely offensive, but not actionable.[91] These differing standards are in place to ensure that

---

[86] Rec. Doc. 1-3 at 3 (internal quotation omitted); Rec. Doc. 24-3 at 2.

[87] Rec. Doc. 1-3 at 3; Rec. Doc. 24-3 at 3.

[88] *West v. City of Hous.*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)).

[89] *Meritor Sav. Bank*, 477 U.S. at 64.

[90] *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank*, 477 U.S. at 65, 67).

[91] *Id.*

Title VII does not become a "general civility code"[92] whereby "the ordinary tribulations of the workplace" are actionable.[93] To be actionable under Title VII, the conduct at issue must be both objectively and subjectively offensive.[94] Therefore, the "victim [must] perceive the environment [as] abusive" and the conduct complained of must "create an objectively hostile or abusive work environment [such] that a reasonable person would find hostile or abusive."[95] The Fifth Circuit has instructed that to determine whether a work environment is hostile or abusive, "courts consider the totality of the circumstances including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."[96] No single factor is determinative.[97]

Beginning in January 2015, and consistently throughout Plaintiff's employment, Plaintiff was subjected to a myriad of repeated, pervasive, racially-demeaning jokes, gestures, and comments on the basis of his Native American heritage.[98] Plaintiff testified that the discrimination, including comments by Comeaux that Plaintiff was "the platform Mexican," occurred "repeatedly,

---

[92] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Harris*, 510 U.S. at 18).

[93] *Id.* (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

[94] *Harris*, 510 U.S. at 21–22 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.").

[95] *Id.*

[96] *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007).

[97] *Id.*

[98] Plaintiff alleges that Primeaux made a vulgar comment about his wife. Rec. Doc. 24-2. Plaintiff has failed to provide evidence, however, that such comment was made based on his race.

often, and just nearly daily."[99] Plaintiff testified about incidents with LaBeauf and Martin which happened "within weeks" of each other.[100] Plaintiff testified that Comeaux's comments were made "for all to hear and to chuckle at."[101] Plaintiff stated that Comeaux became physical with Plaintiff when he "entrapped Plaintiff and hit Plaintiff repeatedly with a door" while asking Plaintiff if he wanted to fight.[102] Plaintiff further testified that Comeaux "twisted his nipples," an act that Comeaux only did to Plaintiff and no other employees on the platform.[103] Shamrock's own internal investigation found that "Bullying or Harassment was verified."[104] Plaintiff claims that this harassment led him to resign and led him to begin taking antianxiety medication, and Plaintiff testified that he is now "blackballed from the Gulf" as a result of his harassment complaints.[105] Considering all of these facts, the Court finds that the conduct was sufficiently "severe or pervasive" as to affect a "term, condition, or privilege" of employment.

Under the fifth prong, accepting Plaintiff's statement of uncontested facts as true, Plaintiff has also made a showing that Defendants failed to take "prompt remedial action." Plaintiff states that on April 17, 2017, Lance Martin—one of the employees who harassed Plaintiff—returned to working at Plaintiff's platform and was seated three feet from Plaintiff.[106] Plaintiff was further told that Brandon LeBeauf—the employee who attempted to put a dirty bird feather in Plaintiff's hair—

---

[99] Rec. Doc. 24-4 at 21.

[100] *Id.* at 25.

[101] *Id.* at 22.

[102] Rec. Doc. 24-2 at 12.

[103] Rec. Doc. 24-4 at 22.

[104] Rec. Doc. 24-7.

[105] Rec. Doc. 24-2 at 18; Rec. Doc. 24-4 at 58.

[106] Rec. Doc. 24-3 at 5.

would also be returning to Plaintiff's platform.[107] Accepting Plaintiff's statement of uncontested facts as true, Plaintiff has provided evidence that Defendant's failure to separate the harassing employees from Plaintiff rendered Defendant's conduct "not reasonably calculated to halt the harassment."[108] Indeed, in many of the cases where the Fifth Circuit has found that the employer did take "prompt remedial action" as a matter of law, the employer had separated the harasser from the plaintiff.[109] Plaintiff's evidence showing that Shamrock failed to separate the harassing employees and otherwise failed to discipline them is sufficient for a jury to find that Shamrock did not take "prompt remedial action."

Accordingly, because Plaintiff has made a prima facie showing of a hostile work environment under Title VII and the Louisiana Revised Statute § 23:332, Plaintiff's unopposed motion for summary judgment on this claim must be granted. The motion must be granted not simply because Defendant failed to oppose it, but because Plaintiff presents evidence sufficient to meet each element of a hostile work environment claim.

## B.    *Constructive Discharge*

"A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge."[110] To prove a constructive discharge, a plaintiff must "establish that working

---

[107] *Id.*

[108] *Williams-Boldware*, 741 F.3d at 640.

[109] *Skidmore v. Precision Printing & Packaging, Inc*., 188 F.3d 606, 616 (5th Cir. 1999) (finding that the employer took prompt remedial action when it reprimanded the harasser and transferred the plaintiff to a new shift); *Briones v. Caleb Bret USA, Inc.*, No. 94-20927, 1995 WL 625328, at *3 (5th Cir. Oct. 3, 1995) (holding that the employer took prompt remedial action where it investigated the complaint, reprimanded the harasser, and offered to transfer the plaintiff to an office away from the harasser); *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 404 (5th Cir. 1993) (same); *Carmon v. Lubrizol*, 17 F.3d 791, 793 (5th Cir. 1994) (finding prompt remedial action where the employer issued a memorandum about proper workplace behavior and transferred the harassing employee to another shift).

[110] *Brown v. Kinney Shoe Corp.*, 237 F.3d 566, 566 (quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir.

conditions were so intolerable that a reasonable employee would feel compelled to resign."[111] To determine whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered the relevancy of the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]....[112]

"Constructive discharge requires a greater degree of harassment than that required by a hostile work environment claim. Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote."[113]

Here, Plaintiff was not discharged; he resigned.[114] Plaintiff contends that he was constructively discharged because Shamrock acknowledged that Plaintiff has been subjected to harassment based on his Native American heritage and told Plaintiff they would remedy the situation, yet failed to follow through on this promise.[115]

Analyzing the aggravating factors listed above, Plaintiff has not presented any evidence to show that: (1) he was demoted from his position; (2) that he faced a reduction in salary; (3) that Shamrock reduced his job responsibilities; (4) that he was reassigned to menial or degrading work; (5) that he had to work under a younger supervisor; (6) that he was badgered, harassed, or

---

1997)).

[111] *Id.*

[112] *Id.* (citing *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

[113] *Id.* (citing *Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998)).

[114] Rec. Doc. 24-2 at 17.

[115] *Id.* at 28.

humiliated by Shamrock in a manner calculated to encourage Plaintiff's resignation; or (7) that Shamrock made any offers of early retirement or continued employment on terms less favorable than the employee's former status. Thus, even accepting Plaintiff's version of the facts as true, Plaintiff has not presented any evidence to support any of the factors that the Fifth Circuit considers in analyzing a constructive discharge claim. As the Court has stated, a motion for summary judgment cannot be granted simply because it is unopposed. Because Plaintiff has not presented any evidence to support his constructive discharge claim, summary judgment is not appropriate.

### C. *Damages*

Having found that Plaintiff is entitled to summary judgment on his hostile work environment claim, the Court must determine the damages to which Plaintiff is entitled. Plaintiff requests a total damages award of $687,069.72.[116] Plaintiff contends that this includes $387,069.72 in backpay and $300,000 in compensatory damages.[117] In addition, Plaintiff also requests he be awarded pre-judgment interest on any damages awarded by the Court, as well as attorney's fees.[118]

Plaintiff's back pay request was calculated based on the number of weeks between the date of Plaintiff's alleged constructive discharge on April 28, 2017, and the filing of the instant motion.[119] However, as explained above, the Court has found that Plaintiff is not entitled to summary judgment on the constructive discharge claim. Furthermore, several circuits, including the Fifth Circuit, have held that back pay is not available where the plaintiff was not actually or constructively discharged.[120] Accordingly, Plaintiff has submitted insufficient briefing for the

---

[116] Rec. Doc. 24–2 at 29.

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] *Boehms v. Cromwell*, 139 F.3d 452, 461 (5th Cir. 2006); *Spencer v. Wal-Mart Stores*, 469 F.3d 311, 317

Court to determine the appropriate damages award. Plaintiff is directed to submit supplemental briefing, within fourteen days of this Order and Reasons, as to the amount of damages he is seeking for the hostile work environment claim, as well as prejudgment interest and attorney's fees.

### IV. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Josh Desport's "Motion for Summary Judgment"[121] is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART**. Summary judgment is granted as to Plaintiff's hostile work environment claim. Summary judgment is denied as to Plaintiff's constructive discharge claim. The Court defers ruling in part to the extent Plaintiff requests damages.

**IT IS FURTHER ORDERED** that Plaintiff shall submit supplemental briefing, within fourteen days of this Order and Reasons, as to the amount of damages he is seeking for the hostile work environment claim, as well as prejudgment interest and attorney's fees.

**NEW ORLEANS, LOUISIANA**, this  14th  day of December, 2021.

*[signature: Nannette Jolivette Brown]*

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

(3d Cir. 2006).

[121] Rec. Doc. 24.